### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONALD D. LAKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   Case No. CIV-20-769-F |
| | ) |
| CARLISLE FOOD SERVICES | ) |
| PRODUCTS, INC., d/b/a CFS | ) |
| BRANDS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the court is Defendant Carlisle Food Service Products, Inc.'s Motion for Summary Judgment, filed September 1, 2021. Doc. no. 32. Plaintiff Ronald D. Lake (Lake) has responded, opposing summary judgment. Doc. no. 41. Defendant Carlisle Food Service Products, Inc. (CFS) has replied. Doc. no. 46. Having carefully reviewed the parties' submissions, the court makes its determination.

I.

### *Background*

This is an employment discrimination case. Lake alleges that CFS terminated him because of his age. He has brought disparate treatment claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and the Oklahoma Anti-Discrimination Act (OADA), 25 O.S. 2021 § 1101 *et seq*. After conducting discovery, Carlisle seeks entry of summary judgment under Rule 56(a), Fed. R. Civ. P., with respect to both claims. Carlisle contends its decision to terminate Lake as part of a reduction in force was legitimate and nondiscriminatory.

## II.

### *Standard of Review*

Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought."  Rule 56(a), Fed. R. Civ. P.  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  In deciding whether summary judgment is appropriate, the court does not weigh the evidence and determine the truth of the matter asserted, but only determines whether there is a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id*. at 248.  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  *Id*. In adjudicating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to Lake, the non-moving party.  McGehee v. Forest Oil Corporation, 908 F.3d 619, 624 (10th Cir. 2018).

## III.

### *Relevant Facts*

CFS produces food service products, with its primary customers being restaurants. In 2020, the company maintained two production facilities in Oklahoma City—Lincoln and Santa Fe.  Each facility had three production supervisors over injection and rotational molding, one for each shift, for a total of six production supervisor roles.  At the time of termination, Lake served as the production supervisor for the second shift at the Santa Fe facility.

In early March of 2020, Thomas "Bart" Moon (Moon) began his employment with CFS as Vice President of Operations.  He was 49 years old.  After he started

his employment, Moon noticed that the two production facilities operated inefficiently.  According to Moon, the facilities often created excess product and not all employees were held accountable.  Based on his observations, Moon knew changes at the facilities needed to occur.

The COVID-19 pandemic and its corresponding impact on the restaurant industry adversely affected CFS's business.  By early April 2020, CFS had lost 90% of its business volume.

CFS laid off approximately 70% of its hourly production employees.  Due to the decrease in business volume and hourly staff, CFS conducted a reduction in force (RIF) of salaried employees to reduce headcount and costs and to realign staffing with operational needs and demands.

Apart from the immediate impact of the pandemic, Moon believed CFS would eventually close one of the two production facilities and eliminate half of the production/operations managerial staff to better meet CFS's business needs.[1]

In conducting the RIF, Moon eliminated three of the six injection and rotational molding supervisor positions.  Moon consolidated the six injection and rotational molding supervisor positions (first, second and third shift at Lincoln and first, second and third shift at Santa Fe) into three injection production supervisor positions.  According to Moon, the consolidated positions required supervision of both the Lincoln and Santa Fe facilities and the performance of additional duties.  Moon separated the rotational molding department from the injection department, putting the rotational molding department under the direct management of a departmental manager with no supervisory position.

Only five of the six production supervisor positions were filled at the time of the RIF.  Of the five production supervisors, Moon selected Lake and Trennische

---

[1]  CFS closed the Lincoln facility in March of 2021.

Sutton (Sutton) to be terminated.  Lake was 62 and Sutton was 61.  Both were terminated on April 3, 2020.  Lake had worked nearly 20 years as a production supervisor.

Moon demoted two other production supervisors, Danny Caldero (Caldero) and Kevin Baker (Baker), to their former positions as production lead and engineer, respectively, which positions were unfilled at the time of the RIF.  Caldero was 52 and Baker was 32.  John "David" Robinson (Robinson) continued as a production supervisor, covering the third shift for both facilities.  Robinson was 50.

David Martin (Martin) was promoted to a newly created position of production manager, and as part of his duties, performed the role of production supervisor for the first shift for both facilities.  Martin was 33 and had a college degree in plastics engineering.  John "Jack" Brown (Brown) was promoted from the position of lean facilitator associate to production supervisor.  According to Moon, Brown continued to perform lean initiative activities.  Brown performed the production supervisor role for the second shift for both facilities.  He was 27 and had a college degree in economics.

According to Moon, in deciding who to select for the three injection production supervisor roles, he assessed employees' skills, training, and who could perform other roles or duties in addition to injection production supervisor.  Three days prior to Lake and Sutton's termination, Moon emailed Barrie Green, Vice President of Human Resources, stating in part:

> Two MFG Supervisors to remove.  Two Cos guys to stick
> into those spots.  What[']s the best plan for removal of
> supervisors (what is our process for defending the two that
> we are picking)? Will not attempt this move until after I
> get commitments form Jonathan and Jack.

Doc. no. 41-4.  The two "MFG Supervisors" were Lake and Sutton.  The two "Cos guys" were Jonathan Maze (Maze) and Brown.  Moon had considered Maze,

who was in his 30's, for the production supervisor position but decided against it. Maze's position was also eliminated, and he was terminated as part of the RIF.

The job description for the production supervisor position remained the same after the RIF.  A college degree was not required for the position.  Two to four years of related experience or training was also accepted.  At the time of his termination, Lake, although not having a college degree, possessed the necessary qualifications for his position and was performing satisfactory work.

IV.

*Analysis[2]*

In the absence of direct evidence of age discrimination, the court applies the three-step burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  *See*, Frappied v. Affinity Gaming Black Hawk, LLC, 966 F.3d 1038, 1056 (10th Cir. 2020) (citation omitted).  At the first step, a plaintiff must establish a prima facie case of age discrimination.  *Id*.  In termination cases, a prima facie case of age discrimination is usually established by a showing that the plaintiff "(1) was within the protected class of individuals 40 or older;" (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age."  *Id*.  (quoting Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008)).  For RIF cases, the fourth element may also be established by showing that "plaintiff was treated less favorably than younger employees during the [RIF]." Pippin v. Burlington Resources Oil and Gas Co., 440 F.3d 1186, 1193 (10th Cir. 2006) (quoting Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998)).

---

[2] The court's analysis applies for both the ADEA and OADA disparate treatment claims.  *See*, Bennett v. Windstream Communications, Inc., 792 F.3d 1261, 1269 (10th Cir. 2015).

The court finds Lake has proffered sufficient evidence to establish each of the elements of a prima facie case of age discrimination.  Specifically, with respect to the fourth element, Lake has proffered sufficient evidence to establish that he was treated less favorably than Brown (over 30 years younger) and Robinson (twelve years younger).

"At the second step of the burden-shifting analysis, the employer bears the burden of production to identify a legitimate, nondiscriminatory reason for the adverse employment action."  Frappied, 966 F.3d at 1058 (citation omitted). "'[T]his stage of the analysis only requires the defendant to articulate a reason for the discipline that is not, on its face, prohibited' and that is 'reasonably specific and clear.'"  Id. (quoting E.E.O.C. v. Flasher Co., 986 F.2d 1312, 1316 & n. 4 (10th Cir. 1992)).

CFS has articulated a legitimate, nondiscriminatory reason for its employment position.  CFS conducted a RIF (1) to reduce headcount and costs and to realign staffing with operational needs and demands; and (2) to work toward an efficiency goal it had identified before the pandemic.  As part of the RIF, Moon eliminated three of the six injection and molding production supervisor positions and the revamped positions required employees to perform additional duties.  After assessing employees' skills and training and who could perform other roles in addition to the production supervisor role, Moon selected Lake for termination.

"At the third step of McDonnell Douglas, a plaintiff must show the employer's proffered reason for the adverse employment decision was pretextual."  Frappied, 966 F.3d at 1059 (citation omitted).  "'A plaintiff can show pretext by revealing weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the

6

employer did not act for the asserted non-discriminatory reason.'"   *Id.* (quoting Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002)).

Viewing the evidence and drawing reasonable inferences therefrom in a light most favorable to Lake, the court concludes a genuine issue of material fact exists as to whether CFS's proffered reason for selecting Lake for termination was pretextual.  While Moon indicated he selected Lake for termination after assessing employees' skills and training and who could perform other roles in addition to the production supervisor role, three days before Lake was terminated, Moon emailed Green stating in part:

> Two MFG Supervisors to remove.  Two Cos guys to stick in those spots.  What['s] the best plan for removal of the supervisors (what is our process for defending the two we are picking)?  Will not attempt this move until after I get commitments from Jonathan and Jack.

Doc. no. 41-4.  The "MFG supervisors" refer to Lake and Sutton and the "Cos guys" refer to Maze and Brown.  Although Maze was not ultimately selected for the production supervisor position, the court opines that a reasonable factfinder could conclude from the email that Moon had not selected Lake for termination based upon his assessment of employees' skills and training and who could perform other roles in addition to the production supervisor role.  In its reply, CFS contends that prior to the email, Moon had had a conversation with Green about his rationale for selecting Lake for termination, and he was attempting to get feedback from her on whether his rationale "fits within what [Green] would have considered the company's HR norms and policies."   Doc. no. 46, ECF p. 5, quoting ex. 1, p. 86; ECF p. 8. However, viewing the evidence and drawing all reasonable inferences in a light most favorable to Lake, a reasonable juror could conclude that Moon did not have a rationale for selecting Lake for termination and for selecting Brown for the position.

The court concludes a reasonable factfinder could find CFS's proffered reason for Lake's termination unworthy of credence.

In addition to Moon's email, the evidence shows that Moon selected the two oldest supervisors for termination.  Both supervisors were over 60 years old.  He demoted two younger employees to former positions which avoided their termination.  He retained Robinson who was 12 years younger than Lake and promoted Brown who was over 30 years younger than Lake.  Martin, who also performed the production supervisor role, was almost 30 years younger than Lake.  And while CFS contends that the revamped supervisor position required the employees to perform additional duties, there is an absence in the record of any additional duties that Robinson performed.  Additionally, the evidence shows that the job description for the supervisor position did not change after the RIF.  Lake possessed the necessary qualifications for the position, and while he did not have a college degree, like Brown or Martin, the position did not require a college degree.  Also, there is no evidence in the record that Robinson had a college degree.  Further, Moon testified that one of the criteria he used for the RIF was whether the supervisors were creating a playbook for their shifts.  According to Moon, Robinson and Brown were creating versions of a playbook, but there is an absence of evidence that Lake had been instructed by Moon or his plant manager to create the playbook.

"A plaintiff can withstand summary judgment by presenting evidence sufficient to raise a genuine issue of material fact regarding whether the defendant's articulated reason for the adverse employment action is pretextual."  Garrett, 305 F.3d at 1217.  The evidence, viewed in a light most favorable to Lake, raises such a genuine issue of material fact.  The court therefore concludes that summary judgment is not appropriate with respect to Lake's age discrimination claims.

V.

*Conclusion*

Accordingly, Defendant Carlisle Food Service Products, Inc.'s Motion for Summary Judgment, filed September 1, 2021 (doc. no. 32), is **DENIED**.

IT IS SO ORDERED this 4th day of November, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-0769p011.docx